IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MELISSA DEVIN MAGNESS, | : | CIVIL ACTION |
| individually and on behalf of all others | : | |
| similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., et al. | : | NO. 15-2402 |

ORDER

AND NOW, this 21st day of July 2016, upon consideration of Defendants' motion for summary judgment and statement of undisputed facts (Doc. Nos. 47, 47-1 & 47-3), Plaintiff's response to the motion and to the statement of undisputed facts (Doc. Nos. 50 & 50-3), and Defendants' reply to Plaintiff's response (Doc. No. 53), it is hereby ORDERED that the motion is DENIED.

I. Background

The following facts are undisputed.[1] On June 27, 2011, Plaintiff Melissa Magness obtained a mortgage from Defendant Bank of America ("BOA") for her personal residence. On her mortgage loan application, Plaintiff provided three phone numbers: xxx-xxx-6285, xxx-xxx-0074, and xxx-xxx-8888. She listed the -6285 number as her home telephone number. However, the number was in fact for a cell phone used primarily by Plaintiff. This number is the only cell phone in Plaintiff's name and thus the only phone number relevant to this case.

The period of time at issue in this matter spanned from August 2012 to September 2012. During that time, Defendant Dialogue Marketing, Inc. ("DMI") placed several calls to Plaintiff on behalf of BOA[2] to discuss a modification of her mortgage loan. Though the parties disagree

---

[1] This summary is based on the Defendants' statement of undisputed facts (Doc. No. 47-3) and Plaintiff's response to this statement (Doc. No. 50-3), as well as the record before the Court.
[2] BOA hired Urban Settlement Services, LLC d/b/a Urban Lending Solutions ("Urban") to place

1

with respect to how many calls were placed and whether Defendants have kept and produced an accurate record of all the calls that were made, they agree that DMI called Plaintiff on September 7, 2012; September 11, 2012; September 17, 2012; and September 19, 2012. DMI also attempted to place a call on September 13, 2012, but Defendants maintain that no connection was made on this date. According to Defendants, these were the only calls that were placed, but Plaintiff contends that she received additional calls, including once on September 13, 2012, twice on September 18, 2012, and once on September 21, 2012.

During the September 19, 2012 call, Plaintiff stated that she no longer wished to be contacted by Defendants. The parties disagree, however, whether this was the first instance on which Plaintiff asked not to be contacted. They also disagree about whether any calls were placed after this date, though they agree that Plaintiff does not recall or have any record of receiving calls to her cell phone after October 2012.

According to Defendants, Plaintiff communicated her request to no longer be contacted for the first time on September 19, 2012, but Plaintiff contends that she also made such a request during a conversation with BOA on September 17, 2012 and on several other occasions. Although Defendants claim that Plaintiff received no calls after September 19, 2012, according to Plaintiff, she recalls receiving additional calls after this date, including on September 21, 2012.

Plaintiff brought this action on behalf of herself and on behalf of a class of individuals who she alleges received similar calls in violation of the Telephone Consumer Protection Act

---

the calls on behalf of BOA. Urban in turn directed DMI, a vendor of Urban, to actually make the calls. Walled Lake Credit Bureau, LLC ("Walled Lake") is a subsidiary of Urban.

("TCPA").[3] Her complaint contains one count in which she alleges that all three Defendants violated the TCPA.

Defendants BOA, Urban, and Walled Lake filed a motion for summary judgment under Federal Rule of Civil Procedure 56 on Plaintiff's single count. DMI joined their motion. Plaintiff responded and opposed summary judgment, and Defendants filed a reply in which they also moved in the alternative for partial summary judgment.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it could "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if sufficient evidence exists that "a reasonable jury could return a verdict for the nonmoving party." Id. When considering a motion for summary judgment, the Court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013).

The moving party bears the initial burden of identifying evidence showing an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy its burden, the moving party need not "produce evidence showing the absence of a genuine issue of material fact"; rather, the moving party need only identify the "absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party must "go

---

[3] The Court ordered the bifurcation of individual and class discovery in this matter. The motion before the Court pertains only to Plaintiff's individual claims against Defendants.

beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quotation marks omitted). If the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment should be granted. Id. at 322–23.

III. Discussion

Defendants contend that summary judgment is warranted because, according to them, the evidence shows that Plaintiff consented to receive calls to her cell phone when she listed her cell phone number on her loan application; once she revoked her consent to receive calls to that number, Defendants made no additional autodialed calls to her cell phone. (Defs.' Mem. Law Supp. Mot. Summ. J. 7–9, Doc. No. 47-1.) Plaintiff disagrees with Defendants with respect to both points. She contends that she did not consent to receive calls to her cell phone and, even if she had, she still continued to receive calls after she revoked consent. (Pl.'s Omnibus Resp. Opp'n Defs.' Mot. Summ. J. 13, Doc. No. 50.) Assuming that Plaintiff did consent to the calls, the parties also disagree about when she revoked her consent. (See Pl.'s Resp. 19–21; Defs.' Mot. 8–9.) The parties therefore both agree that Plaintiff received autodialed calls to her cell phone. The only issues that they purportedly dispute are (1) whether Plaintiff consented to receive calls to her cell phone, (2) if so, when she revoked consent, and (3) whether she continued to receive autodialed calls to her cell phone after she revoked consent. If Defendants have established that there is no genuine dispute as to these facts, then summary judgment would be appropriate.

The TCPA makes it unlawful "for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of

the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1). In order to assert a TCPA claim, a plaintiff must establish that he or she (1) received a call to a cell phone number, (2) from an automatic telephone dialing system, and (3) did not give prior express consent, either written or oral. See id. The parties do not dispute the first two of these three elements.

*A. Did Plaintiff consent to receive autodialed calls to her cell phone?*

With respect to the third element, the Federal Communications Commission ("FCC") has offered some guidance that is illustrative here. In a 1992 ruling, the FCC stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8769, ¶ 31 (Oct. 16, 1992). A party's providing a cell phone number to a creditor as part of a credit application "reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 564, ¶ 9 (Jan. 4, 2008) (hereinafter "2008 Ruling"). The FCC further stated that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." Id. at 565, ¶ 10; cf. In re Rules & Regulations Implementing the Tel. Prot. Act of 1991, 30 FCC Rcd. 7961, 8028, ¶ 141 (July 10, 2015) (hereinafter "2015 Ruling") ("We clarify, therefore, that provision of a phone number to a healthcare provider constitutes prior express consent for healthcare calls subject to HIPAA by a HIPAA-covered entity and business associates acting on its behalf, as defined by HIPAA, if the

5

covered entities and business associates are making calls within the scope of the consent given, and absent instructions to the contrary.").

Defendants contend that when Plaintiff provided her cell phone number on her loan application, she consented to receive phone calls on her cell phone from BOA and third parties calling on behalf of BOA in connection with her loan. (Defs.' Mot. 7–8.) Plaintiff thus agreed to receive calls from DMI on BOA's behalf. (See Defs.' Mot. 7–8.)

Plaintiff argues in response, however, that though she consented to contact from BOA and the "servicers, successors and assigns" of her loan, she did not consent to be called by Urban, Walled Lake, or DMI, as they are not servicers, successors, or assigns of the loan. (Pl.'s Resp. 13–14.) She further argues that the loan application and mortgage gave no indication that Plaintiff would receive phone calls from Urban, Walled Lake, or DMI or that automatic telephone dialing technology would be used to make the calls. (Pl.'s Resp. 16–17.)

Plaintiff's arguments are without merit. Under the FCC's interpretation of the TCPA, the act of knowingly providing one's cell phone number on a credit application alone, absent instructions to the contrary, supports a finding that a debtor consented to be contacted at that number regarding the debt. Here, the parties agree that Plaintiff listed her cell phone number on her loan application. Plaintiff concedes that by listing this number, she knowingly and voluntarily consented to be contacted by BOA at that number regarding her mortgage. (See, e.g., Pl.'s Resp. 16–17.) Though Plaintiff argues otherwise, by agreeing to receive calls from BOA, Plaintiff also agreed to receive calls from Urban, Walled Lake, and DMI on BOA's behalf in connection to her loan from BOA, even though the loan application did not explicitly list these other entities. As stated in the FCC's 2008 Ruling and reiterated in the 2015 Ruling, calls made by a third party on behalf of an original creditor are treated as if they were made by the original

6

creditor. Thus by consenting to receive calls from BOA, Plaintiff consented to receive calls from third parties acting on BOA's behalf and within the scope of the consent given to BOA. A review of the record indicates that the parties do not dispute that Urban, Walled Lake, and DMI were acting on behalf of BOA. As Plaintiff herself states, DMI employees explicitly indicated during their calls to Plaintiff that they were calling on behalf of BOA. (See Pl.'s Resp. 4.) Additionally, there is no dispute that DMI's calls related to Plaintiff's mortgage with BOA and thus fell within the scope of Plaintiff's consent to BOA. Accordingly, there is no genuine dispute of fact that Plaintiff consented to the calls.

Plaintiff argues, however, that other circuit courts have held that "prior express consent" requires more than merely providing a cell phone number. (Pl.'s Resp. 13–19.) In these cases, Plaintiff argues, to determine whether the plaintiff consented, the Courts of Appeal for the Sixth Circuit, Ninth Circuit, and Eleventh Circuit focused on the language in the signed document on which the plaintiff listed a cell phone number. (Pl.'s Resp. 13–19.) They found consent only where language in the document explicitly stated that the plaintiff would receive calls from business affiliates. (Pl.'s Resp. 13–19.) Plaintiff contends that under this out-of-circuit case law, listing her cell phone number on the loan application here was not sufficient to find express consent to calls from Urban, Walled Lake, or DMI since her loan application did not contain explicit language stating that she would receive calls from these third parties.[4] (Pl.'s Resp. 13–19.)

---

[4] Plaintiff also cites to deposition testimony in which she stated that she did not provide consent for BOA's associates to call her (see Pl.'s Resp 18); she thus attempts to frame the issue before the Court as a disputed question of fact. However, the issue of what constitutes prior express consent presents a question of law. Plaintiff and Defendants disagree with respect to what facts are required to establish prior express consent, but, as stated above, they do not disagree about the relevant underlying facts: specifically, that Plaintiff listed her cell phone number on her mortgage loan application with BOA and that DMI called her in relation to the mortgage on behalf of BOA.

7

Plaintiff's arguments are unpersuasive. As an initial matter, the FCC explicitly stated in the 2008 Ruling that "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." 2008 Ruling, 23 FCC Rcd. at 564, ¶ 9. That the BOA loan application did not explicitly state that Plaintiff might receive calls from entities other than BOA or indicate that automatic telephone dialing technology would be used is of no legal moment, as the FCC's interpretation of the TCPA does not state that such disclosure is required. Indeed, courts both within this district and in other districts, applying this understanding, have found that there was express consent where the plaintiff merely provided a cell phone number on a document or when completing a transaction—even if, as was the case here, there was no indication that the plaintiff would receive autodialed calls from entities other than the entity to whom the plaintiff directly provided consent. See, e.g., Daubert v. NRA Group, LLC, No. 3:15-cv-00718, 2016 WL 3027826, at *16–17 (E.D. Pa. May 27, 2016) (stating that "express consent can be found even where the plaintiff did not *directly* consent to the defendant . . . [but that] it must be shown that the plaintiff had given express consent to someone at some point" and finding that there was no evidence that plaintiff had expressly consented to the calls, such as by "provid[ing] his cell phone number"); Baird v. Sabre Inc., 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014) (finding no genuine issue of material fact because plaintiff voluntarily provided her cell phone number to Hawaiian Airlines and thus consented to be contacted on her cell phone about flight-related matters by both Hawaiian Airlines and its vendor, Sabre); Saunders v. NCO Fin. Sys., Inc., 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) (stating that plaintiff, "by listing only his cell phone number with PACER, . . . gave both PACER and NCO, its collection agent, 'prior express consent'" under the TCPA).

The cases that Plaintiff cites to support her contentions either do not further her arguments or can be readily distinguished from the instant case. Plaintiff correctly states that in both Baisden v. Credit Adjustments, Inc., 813 F.3d 338 (6th Cir. 2016), and Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014), the plaintiffs listed their cell phone numbers on hospital admissions forms that disclosed that the plaintiffs' information might be released to other parties, including for the purpose of debt collection. See Baisden, 813 F.3d at 340–41; Mais, 768 F.3d 1110, 1113–14. However, although the forms did contain such language, neither court held that the language in the admissions forms was required to find prior express consent, instead merely holding that a caller could obtain the plaintiff's cell phone number and consent under the TCPA through an intermediary. See Baisden, 813 F.3d a 344; Mais, 768 F.3d 1110, 1123–24. Moreover, in both cases, the admissions forms indicated only that the plaintiff's *health information* might be transmitted, not the plaintiff's cell phone number; additionally, neither form appears to have referenced the use of automated telephone dialing technology. See Baisden, 813 F.3d a 340–41; Mais, 768 F.3d 1110, 1113–14. Thus, the language on the forms was not as explicit as Plaintiff purports that it was. Finally, in Baisden, the Sixth Circuit went on to state that the FCC has "stressed that there is no one way to provide consent" and that "the context of the consent provided is critical." 813 F.3d at 343–44 (citations omitted). Plaintiff's rigid understanding of the required showing to find prior express consent is accordingly unsupported by the cases she cites.

Indeed, like the plaintiffs in Baisden and Mais, Plaintiff in this case claims that Defendants violated the TCPA since she did not provide direct consent to the third parties who contacted her on behalf of BOA, the original creditor. But just as those courts rejected the plaintiffs' arguments regarding direct consent, this Court rejects the similar argument that

9

Plaintiff has raised here. Since Walled Lake, Urban, and DMI were acting on BOA's behalf, and BOA had valid consent to contact Plaintiff, these other entities were authorized to contact Plaintiff about her BOA loan at the number she provided.

Plaintiff also claims that the Ninth Circuit's decision in Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009), is applicable here, but once again, the Court disagrees. In Satterfield, the plaintiff jointed Nextones to obtain a free cell phone ringtone and consented to receive promotions from the company's affiliates and brands. Id. at 949. She then received a promotional text message from defendant Simon & Schuster, Inc., an entity that was unconnected to Nextones, about an unrelated matter. Id. The court found that because the defendant was not a Nextones affiliate or brand, the plaintiff had not expressly consented to receive the promotional text message from the defendant. Id. at 955. The facts in Satterfield can be distinguished from the facts in the instant case. As stated already, it is undisputed that DMI contacted Plaintiff on behalf of BOA and in connection with the loan that Plaintiff had obtained from BOA. Unlike in Satterfield, which involved an entity that was entirely separate from the entity to which plaintiff had provided her cell phone number, the entities here are business affiliates. But the FCC has explicitly stated that this latter type of contact is permitted under the TCPA. Satterfield is thus inapplicable to the facts of this case.

The Court finds that it is undisputed that Defendants had Plaintiff's express consent to contact her at the -6285 number, which is an affirmative defense to Plaintiff's TCPA claim. Defendants' evidence establishes that Plaintiff voluntarily provided her cell phone number on her mortgage loan application with BOA. Under the FCC's interpretation of the TCPA, Plaintiff therefore consented to be contacted on her cell phone about matters related to her loan. Defendant BOA then used a third party to contact Plaintiff on her cell phone regarding her

mortgage, which was within the scope of Plaintiff's prior express consent. There is no genuine dispute of material fact with respect to the issue of whether Plaintiff consented to the calls. However, the Court must next consider the two remaining issues that Plaintiff claims are in dispute—namely, when she revoked her consent and whether she received autodialed calls to her cell phone after she revoked consent. If Defendants have established that there is no genuine dispute as to these facts, then summary judgment would be appropriate; if not, Plaintiff may be able to proceed with her claim under the TCPA.

*B. When did Plaintiff revoke her consent to receive autodialed calls?*

Although the TCPA does not expressly authorize revocation of consent, the FCC has stated that "[c]onsumers have the right to revoke consent, using any reasonable method including orally or in writing," including, "for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities." 2015 Ruling, 30 FCC Rcd. at 7996, ¶ 64; accord Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270–71 (3d Cir. 2013) ("[W]e conclude that the absence of an express statutory authorization for revocation of prior consent in the TCPA's provisions on autodialed calls to cellular phones does not tip the scales in favor of a position that no such right exists."). The FCC further provided that

> [w]hen assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance . . . .

2015 Ruling, 30 FCC Rcd. at 7996 n.233.

Defendants contend that Plaintiff revoked her consent on September 19, 2012 and that following this date, Plaintiff did not receive additional phone calls. (Defs.' Mot. 8–9; Defs.'

11

Reply Mem. Law Supp. Mot. Summ. J. 4, Doc. No. 53.) To support this contention, Defendants point to DMI's call logs, which, based on Urban and DMI's deposition testimony, Defendants argue are complete and accurately capture the four calls that were placed to Plaintiff's cell phone. (Defs.' Reply 4.) Defendants claim that DMI's records unequivocally establish that no calls were completed after September 19, 2012 and that this fact is undisputed because Plaintiff has not produced any documentation that can contest Defendants' business records. (Defs.' Reply 4.) According to Defendants, since Plaintiff does not remember a specific instance on which she received a call after she revoked her consent, there is no evidence to support her position that she revoked consent on a date earlier than September 19, 2012. (Defs.' Reply 4–6.)

Plaintiff, however, disagrees with Defendants' contentions. Plaintiff argues that she in fact revoked her consent to receive calls on a date earlier than September 19th, including during a phone conversation that she and her father had with BOA on September 17, 2012. (Pl.'s Resp. 19–21.) She points to portions of the recording of that phone conversation to support her claim and alleges that during that conversation, she made a "clear, explicit, and unequivocal" request that Defendants stop calling her.[5] (Pl.'s Resp. 19.) In addition to this September 17th call, she

---

[5] Defendants claim that the evidence of the September 17th phone call is inadmissible. However, they claim that the unofficial, partial *transcript* of the call that is included as an exhibit to Plaintiff's brief and quoted within Plaintiff's brief is inadmissible, not the *recording* of the call itself. (See Defs.' Reply 5.) Plaintiff does not purport to introduce the transcript of the call as evidence; instead, as she explains in her brief, she only included the partial transcript in order to set forth the portions of the recording that were relevant to her arguments. (See Pl.'s Resp. 6 n.18.) This Court accordingly rejects Defendants' arguments regarding the partial transcript. If Defendants wish to object to the introduction of the recording, they may do so at a later time, but the Court does not now entertain this claim as Defendants have not argued that the recording of the conversation is inadmissible. Moreover, regardless of the recording of the September 17th telephone conversation, Plaintiff's deposition testimony, though a thin basis to support her claims, is sufficient evidence for her claims to withstand a motion for summary judgment.

Defendants also argue that the September 17th call "does not show that Plaintiff unequivocally revoked her consent to receive calls on her cell phone" because "the majority of the conversation was between [BOA] and Plaintiff's father." (Defs.' Reply 5.) However, Defendants' argument raises a
12

also points to testimony from her own deposition, specifically to her statements that she remembered more than one instance on which BOA or a representative called her cell phone after she had asked them to stop calling her. (Pl.'s Resp. 20.) Though in her deposition Plaintiff did not reference specific dates with respect to when she was contacted or when she asked Defendants to stop calling her, she still contends that her testimony offers support for her claim that she revoked consent before Defendants stopped calling her. (See Pl.'s Resp. 20–21.)

The record before the Court demonstrates that there is a genuine dispute of material fact as to when Plaintiff revoked her consent to be contacted: Plaintiff claims she revoked consent on September 17, 2012 or at some earlier point, while Defendants contend that Plaintiff did not revoke consent until September 19, 2012. Though Defendants argue that there is no evidence to support Plaintiff's claim and that a jury could not find in favor of Plaintiff, this Court disagrees with Defendants' characterization of the record. The recording of the September 17th call and Plaintiff's deposition testimony establish that there is a genuine issue for trial, as they contradict Defendants' claims as to when Plaintiff revoked her consent to be contacted. This material and genuine factual dispute cannot be resolved at this stage of the proceedings. The Court thus denies Defendants' motion.

*C. Defendants' request for partial summary judgment*

Defendants move in the alternative for partial summary judgment with respect to the calls placed on September 7, 2012; September 11, 2012; and September 17, 2012. (Defs.' Reply 7.) However, the Court denies Defendants' request because there is a genuine dispute of material

---

factual question that this Court is not permitted to decide at this time: specifically, whether the Plaintiff clearly revoked her consent and whether she effectively did so through her father's statements. The FCC has stated that a phone subscriber may revoke their consent through any reasonable means and that what constitutes reasonable means is dependent on the particular facts and circumstances of the case. 2015 Ruling, 30 FCC Rcd. at 7996 n.233. Here, a reasonable jury could find that a conference call in which both Plaintiff and her father participated was a reasonable means of revoking consent to receive calls to Plaintiff's cell phone.

fact with respect to when Plaintiff revoked her consent and whether Defendants' call records are complete and accurate.

Granting Defendants' request would be premised on a finding that Plaintiff did not revoke her consent prior to September 17th and that the calls made on September 7th, 11th, and 17th were all indisputably placed before she revoked her consent. However, the record before the Court would not permit such a finding, as the parties dispute both issues. Although the parties agree that four calls were made to Plaintiff's cell phone—on September 7th, 11th, 17th, and 19th—they disagree with respect to whether any other calls were made. Defendant maintains that these were the only calls that were completed and that Plaintiff did not rescind her consent until the 19th of September. (Def.'s Mot. 8–9; Def.'s Reply 4.) In support of their arguments, they cite to deposition testimony by Justin Svobada and Justin Lancaster, who are Urban and DMI representatives, as well as a copy of Defendants' call logs. (Def.'s Mot. 8–9; Def.'s Reply 4.) Plaintiff, in contrast, maintains that Defendants' call logs are incomplete and that she received calls after she rescinded her consent to be contacted on her cell phone. (Pl.'s Resp. 21–23.) Plaintiff stated during her deposition that she had requested that Defendants stop calling her on multiple occasions and that she remembered receiving more than four calls to her cell phone, though she could not remember the relevant dates, the number of calls that she received, or the number of requests that she made for Defendants to stop contacting her. (See Ex. P to Pl.'s Resp. at 90–96.) Though Plaintiff contends that on September 17, 2012, she made a request for BOA to stop calling her, she does not claim that this was the only instance on which she made such a request. Indeed, she maintains that this was not the first time she asked Defendants to stop calling (see Pl.'s Resp. 20–23), which could permit a reasonable finding by a

factfinder that she may have requested that Defendants stop calling her before the 7th or 11th of September.

That Plaintiff has a poor recollection of the chronology of events and does not have supporting documentation is an issue of her credibility and the strength of her claim, which present questions for a factfinder and cannot be resolved by a court considering a motion for summary judgment. Accordingly, Defendants' request for partial summary judgment is denied.

IV. Conclusion

For the reasons outlined above, Defendants' motion for summary judgment (Doc. No. 47-1) is DENIED, as is their motion for partial summary judgment with respect to the calls placed on September 7th, 11th, and 17th.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.